## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

YOLANDA B.[1],

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CIVIL NO. 21-1584 (GLS)

### OPINION AND ORDER

Plaintiff seeks review of the Commissioner of the Social Security Administration's denial of her application for disability insurance benefits. Docket No. 1. Plaintiff sustains that the decision should be reversed because it was not supported by substantial evidence and was based on incorrect legal standards. Docket No. 13. The Commissioner opposed. Docket No. 14. The parties consented to the entry of judgment by a United States Magistrate Judge under the provisions of 28 U.S.C. §636(c). Docket No. 4. After a careful review of the administrative record and the parties' briefs, the Commissioner's decision is **AFFIRMED**.

### I.   Procedural Background

Plaintiff worked as a seamstress in a uniform company from 2006 to 2016. Tr. 50.[2] Plaintiff filed an application for disability insurance benefits claiming that, as of April 30, 2016, the following conditions limited her ability to work: high blood pressure, herniated discs, carpal tunnel, osteopenia, osteoporosis, and bone spur on spine. Tr. 581. The application was denied initially and upon reconsideration. Tr. 613-23. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and, on August 17, 2020, a hearing was held before ALJ Ruy V. Díaz. Tr. 39-70. Plaintiff testified and was represented by counsel. Id. Vocational Expert Eligio Hinojosa also testified at the hearing. Id. The ALJ issued a decision finding that Plaintiff was not disabled, as defined in the Social Security Act, at any time from the onset date of April 30, 2016,

---

[1]   Plaintiff's last name is omitted for privacy reasons.
[2]   "Tr." refers to the transcript of the record of proceedings.

1

through June 30, 2020, the last date insured. Tr. 22-33. Plaintiff asked the Appeals Council to review the final decision issued by the ALJ but the request was denied on October 5, 2021 (Tr. 1-4), rendering the Commissioner's decision the final decision for review by this Court. On December 3, 2021, Plaintiff filed the Complaint, and both parties filed supporting memoranda. Docket Nos. 1, 13, and 14.

## II.     Legal Framework

### A. Disability Determination by the SSA: Five Step Process

To receive benefits under the Social Security Act, the ultimate question is whether plaintiff is disabled within the meaning of 42 U.S.C. §423(d). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See Id. The severity of the impairment must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial work which exists in the national economy." 42 U.S.C. §423(d)(2)(A). The burden of proving disability rests on plaintiff. 42 U.S.C. §423(d)(5)(A); Bowen v. Yuckert, 482 U.S. 137, 146 (1987).

The Commissioner engages in a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §404.1520; Bowen, 482 U.S. at 140-142. At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity" and, if so, the claimant is not disabled. 20 C.F.R. §404.1520(b). If not engaged in substantial gainful activity, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments that significantly limit his physical or mental ability to do basic work activities. 20 C.F.R. §404.1520(c). The step two severity requirement imposes a *de minimis* burden, which is designed to screen out groundless claims. McDonald v. Secretary, 795 F.2d 1118, 1123 (1st Cir. 1986).

If the impairment or combination of impairments is severe, the third step applies. The ALJ must determine whether the claimant's severe impairments meet the requirements of a "listed impairment", which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. See 20 C.F.R. §404.1520(d); 20 C.F.R. Part 404, Subpart P, App. 1. If the claimant has a "listed impairment" or an impairment equivalent in severity to a "listed impairment", the claimant is considered disabled. If the claimant's impairment does not meet the severity of a "listed

impairment", the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. §404.1520(e). An individual's RFC is his or her ability to do physical and mental work activities on a sustained basis despite limitations due to impairments. 20 C.F.R. §404.1520(e); §404.1545(a)(1). At step four, the ALJ must determine whether the claimant can perform past relevant work, taking into consideration the RFC. 20 C.F.R. §404.1520(f); §416.920(f). If not, then the fifth and final step applies.

At steps one through four, the claimant has the burden of proving he cannot return to his former employment due to the alleged disability. Santiago v. Secretary, 944 F. 2d 1, 5 (1st Cir. 1991). However, at step five, the Commissioner has the burden to prove the existence of other jobs in the national economy that claimant can perform. 20 C.F.R. §404.1520(g); Ortiz v. Sec'y of Health & Hum. Servs, 890 F. 2d 520, 524 (1st Cir. 1989). If there are none, the claimant is entitled to disability benefits. 20 C.F.R. §404.1520(f).

**B. Standard of Review**

The Court may affirm, modify, reverse, or remand the decision of the Commissioner based on the pleadings and transcript. 42 U.S.C. §405(g). In reviewing a decision, the Court's role is limited to deciding whether the ALJ's decision is supported by substantial evidence in the record and based on a correct legal standard. See Id.; Seavey v. Barnhart, 276 F. 3d 1 (1st Cir. 2001); Manso-Pizarro v. Secretary, 76 F. 3d 15, 16 (1st Cir. 1996); Ortiz v. Secretary, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings of fact are conclusive when supported by substantial evidence but not when obtained by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F. 3d 31, 35 (1st Cir. 1999). "Substantial evidence" is more than a "mere scintilla"; it is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Purdy v. Berryhill, 887 F. 3d 7, 13 (1st Cir. 2018). Under the substantial evidence standard, "a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations" and "the threshold for such evidentiary sufficiency is not high". Biestek v. Berryhill, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019).

A determination of substantiality must be based on the record. Ortiz, 955 F.2d at 769. It is the Commissioner's responsibility to weigh credibility and to draw inferences from the evidence in the record. Rodríguez v. Secretary, 647 F. 2d 218, 222 (1st Cir. 1981). Courts will not second guess the Commissioner's resolution of conflicting evidence. Irlanda Ortiz v. Secretary, 955 F. 2d

765, 769 (1st Cir. 1991). The Commissioner's findings must be upheld if a reasonable mind, viewing the evidence in the record, could accept them as adequate to support his conclusion. Rodríguez, 647 F. 2d at 222. And even if there is substantial evidence, which could arguably justify a different conclusion, the Court must uphold the ALJ's decision if supported by substantial evidence. 20 C.F.R. §404.1546(c); Rodríguez Pagán v. Secretary, 819 F. 2d 1, 3 (1st Cir.1987). Reversal of an ALJ's decision is warranted only if the ALJ made a legal error in deciding the claim or if the record contains no rationally adequate evidence to justify the ALJ's conclusion. Manso–Pizarro, 76 F.3d at 16; Seavey, 276 F.3d at 9.

### III. Discussion

Plaintiff argues that the ALJ erred by failing to categorize several of her impairments as severe, formulating an insufficient RFC, and concluding that Plaintiff could perform her relevant past work. The Commissioner sustains that the ALJ's decision was based on substantial evidence on the record and correct legal standards. The Court agrees with the Commissioner.

**A. The ALJ Decision**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 30, 2016, the alleged onset of disability. Tr. 24. At step two, the ALJ determined that Plaintiff had severe impairments pursuant to 20 C.F.R. §404.1520(c): cervical and lumbar degeneration, bilateral tibial neuropathy, bilateral venous insufficiency, mild bilateral carotid artery disease, left ankle dysfunction, and obesity.[3] Tr. 24. The ALJ further found that Plaintiff had a series of impairments that were not severe since these did not cause, individually or in combination with other impairments, more than minimal work-related difficulties for a continuous period of at least 12 months. Tr. 25-26. The ALJ concluded that Plaintiff's carpal tunnel syndrome was non-severe. Tr. 22; 996; 1002; 1005. The non-severe impairments were evaluated in combination with Plaintiff's severe impairments in determining her RFC. Tr. 24-25.

At the third step, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the severity of a "listed impairment" in 20 C.F.R. Part 404, Subpart P, Appendix 1, and proceeded to determine Plaintiff's RFC. Tr. 27-28. After considering

---

[3] Plaintiff mentions, in passing, that the ALJ erroneously discarded as non-severe other physical impairments, such as colon polyps, hypertension, gastritis and depressive disorder. Docket No. 13 at 3-4. This argument was not developed. Arguments not fully developed or made in passing are deemed waived. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

4

the entire record and all of Plaintiff's symptoms, the ALJ concluded that Plaintiff had the RFC to perform less than the full range of light work, as defined in 20 C.F.R. §404.1567(b), except that she can:

> lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. She could sit for 6 hours; stand for 6 hours, alternate to sitting for 3 minutes, after 1 hour of walking. She could reach frequently overhead to the left and frequently reach overhead to the right. For all other reaching, she could reach frequently to the left and could reach frequently to the right. The claimant could handle items frequently with the left hand and could handle items frequently with the right hand. She had fingering limitations frequently with the left hand and had fingering limitations frequently with the right hand. She could climb ramps and stairs frequently, climb ladders, ropes, or scaffolds occasionally, balance frequently, stoop occasionally, kneel occasionally, crouch occasionally, and crawl occasionally. The claimant could work at unprotected heights occasionally, moving mechanical parts frequently, and operating a motor vehicle frequently. She could work in extreme heat and cold occasionally. Tr. 28.

In formulating the RFC, the ALJ considered Plaintiff's symptoms and the extent to which they were reasonably consistent with the objective medical evidence and other evidence on record, including medical opinions, studies, medications prescribed, and prior administrative medical findings, as required by 20 CFR §404.1529; §404.1520C and SSR 16-3P, 2017 WL 5180304 (S.S.A.). Tr. 28-33. After determining Plaintiff's RFC, the ALJ concluded that Plaintiff was able to perform her past relevant work as seamstress, which is defined in the Dictionary of Occupational Titles ("DOT") as a light and skilled job, even though Plaintiff had described performing it at the medium level. Tr. 33. The ALJ deemed that Plaintiff's work did not require her to perform activities precluded by the RFC. Id. Consequently, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. Tr. 33.

### B. Plaintiff's Challenges to the ALJ's Decision

Plaintiff argues that the ALJ erred at step two of the sequential process by failing to categorize her Carpal Tunnel Syndrome ("CTS") as severe, and by formulating an incomplete RFC. Plaintiff also argues that the ALJ erred by disregarding or minimizing her lower extremity impairments. Docket No. 13 at 3; 22-24. The Court disagrees.

#### 1. Carpal Tunnel Syndrome

Plaintiff argues that the ALJ erred in determining that her CTS was non-severe because it did not consider certain symptoms reported by consultative examiner Dr. Carmen Yaismar Ortiz (i.e., constant pain, numbness and burning, which did not improve with medications) or that she

was diagnosed five years earlier with CTS. Plaintiff further argues that she had surgery on her right hand but continues to have pain, numbness and handling limitations. Docket No. 13 at 5; 23. That her testimony regarding her hand symptoms was not considered by the ALJ. And that the ALJ should have considered that the combination of non-severe impairments made her severely impaired. Docket No. 13 at 23-34. The ALJ did not err when he deemed that Plaintiff's CTS was non-severe. The ALJ did account for minor functional limitations due to Plaintiff's CTS in formulating the RFC.

The ALJ gave weight to consultative examiner Dr. Ortiz Ortiz, who evaluated Plaintiff on July 11, 2018, and reported a positive Tinel test in the right hand but noted that her muscle strength was normal in both upper extremities. Tr. 25; 1002. Dr. Ortiz Ortiz also noted that Plaintiff described constant pain, numbness and burning but determined that she had no pain or tenderness to palpation, no swelling, atrophy, nodes or sensory deficit, and had no hand limitations. Tr. 996; 1002. Furthermore, Plaintiff was able to perform all manipulative activities including gripping, grasping and pinching. Tr. 1005. The ALJ found Dr. Ortiz Ortiz persuasive when she found "no functional limitations, except for the lack of hands limitations." Tr. 32. Dr. Ortiz Ortiz's assessment of Plaintiff was consistent with Plaintiff's medical record. Tr. 32; 589-90; 842-43; 1005; 1083-1147. See 20 C.F.R. §404.1520c(c)(2) ("the more consistent a medical opinion [...] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion […] will be").

In January of 2019, Plaintiff was examined by treating physician Dr. Jorge Padilla-Rodríguez, who determined that Plaintiff had negative bilateral Tinel test but positive bilateral Phalen test. Tr. 1084. The ALJ noted that Plaintiff did not complain of cramps, numbness or tingling sensations during her visits with Padilla-Rodríguez; from January 2019 to March 2019. Tr. 25; 1083-1147. The ALJ determined that Plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the record because Plaintiff was able to perform manipulative activities with her hands Tr. 29-30; 32; 590. Furthermore, the ALJ noted that Plaintiff took medications for her pain which helped. Tr. 29; 56. The ALJ considered all of Plaintiff's symptoms to conclude that her CTS was non-severe. Further, Plaintiff presented no concrete evidence that her hand surgery created limitations. The only evidence put forth by Plaintiff was a preoperative visit to treating physician Dr. Ana M. Mañana Ferro. Tr. 842-43. The preoperative report stated that Plaintiff had full range of motion of the hands

and fingers without swelling or joint deformities. Tr. 842. The report was a preoperatory evaluation of a cyst in Plaintiff's right hand and was completely unrelated to CTS. Tr. 842. The ALJ considered Plaintiff's hand surgery and her symptoms such as pain, numbness and handling limitations but gave weight to Dr. Ortiz Ortiz and Dr. Padilla-Rodríguez. The ALJ thus properly considered the "intensity and persistence of [the] symptoms to determine the extent to which [the] symptoms limit [Plaintiff's] capacity for work" and concluded that Plaintiff's hand limitations were non-severe. Taylor v. Kijakazi, 2023 WL 2163496, at *1 (D. Mass.) (quoting 20 C.F.R. § 404.1529(c)).

The ALJ moved past step two in the sequential analysis of Plaintiff's CTS and deemed that Plaintiff had some RFC limitations based in part on her non-severe CTS. The ALJ concluded that, even though Plaintiff had fingering and handling limitations frequently with both hands, she could perform other physical activities. These include climbing, balancing, stooping, kneeling, crouching and crawling. Tr. 28; 31; 589-590. The ALJ thus accounted for Plaintiff's symptoms (limitations in both hands) in formulating her RFC. Tr. 28; 31. See Coe v. Colvin, 2016 WL 3350995, at *6 (D.Mass.) (citing Perez v. Astrue, 2011 WL 6132547, at *4 (D.Mass.)) ("Any error made by the ALJ in failing to determine whether a certain impairment was severe at step two was harmless, however, as the ALJ explicitly considered 'all symptoms,' both severe and non-severe, in assessing Plaintiff's residual functional capacity [...]"). Therefore, even assuming for purposes of discussion that Plaintiff's CTS should have been deemed severe, the ALJ's RFC stands because he explicitly considered Plaintiff's symptoms in the RFC determination.

### 2. Lower Extremity Impairments

Plaintiff argues that the ALJ erred when he concluded that Plaintiff could stand or walk for six hours despite her lower extremity impairments (i.e., bilateral venous insufficiency, bilateral tibial neuropathy, and edema). Plaintiff further argues that the ALJ erred by failing to properly consider her edema solely because one of the doctors did not report the condition (Tr. 31). Docket No. 13 at 19-20.

The ALJ cited substantial evidence regarding Plaintiff's lower extremity impairments in support of his RFC finding. The ALJ relied on clinical findings by treating physician Dr. Ana M. Mañana Ferro, which showed only grade one swelling in the legs and normal neurological findings (reflexes, strength and sensation) spanning from June 2016 to May 2019. Tr. 138-139; 146; 152-53; 160; 166; 179-80; 190; 197; 311; 318-19; 325-26; 487-88; 527; 542; 834; 1326; 1279. But

7

deemed Dr. Mañana Ferro's report from February 2018, which stated that Plaintiff could sit and stand or walk less than 2 hours, could carry less than 20 pounds, and would likely be absent from work more than 4 days per month, less persuasive because it was inconsistent with other clinical observations of other medical sources. Tr. 822. The medical record showed no evidence of superficial varicosities, stasis dermatitis or ulceration that had not healed following treatment. And the record does not show an extreme limitation to standing from a seated position or balancing difficulties. Tr. 27-28; 32. 1198.

The ALJ found the opinions of medical consultants Dr. Florentino Figueroa and José González Méndez, from Disability Determination Services, less persuasive because they were not fully supported by the evidence which showed lower extremity impairments. And they did not adequately consider Plaintiff's obesity, treatment and pain symptoms. Tr. 32; Tr. 588-590; 606-608. The ALJ determined that, even though Plaintiff's lower leg impairments affected her ability to walk and stand, these impairments did not warrant the imposition of additional functional limitations. Tr. 31. Indeed, the ALJ's RFC finding was even more conservative than Dr. Figueroa's or Dr. González Méndez's assessments because it accounted for Plaintiff's lower extremity impairments stating that she should "alternate to sitting for 3 minutes, after 1 hour of walking." Tr. 28. See Halla v. Colvin, 2016 WL 234802, at *7 (D.Mass.) (no basis to object to the RFC assessment when it is more conservative than the recent RFC assessments of non-examining reviewing physicians on which the ALJ could rely).

As to Plaintiff's edema, the ALJ considered Dr. Ortiz Ortiz's report from July 2018, which did not report edema and found Plaintiff's pulses normal, 5/5 strength in the lower extremities, and normal gait. Tr. 999; 1001-1003. The ALJ further considered the findings of treating physician Dr. Trina Steljes, of deep venous insufficiency and bilateral tibial neuropathy. Tr. 1210 1122-1123; 1333. However, the ALJ noted that Dr. Steljes' report from May 2, 2020, indicated that Plaintiff's redness and hardness in the lower extremities had improved and that she could walk. Tr. 1213; 1344. On May 8, 2020, Dr. Steljes reported that Plaintiff's leg pain had improved with occasional cramps and that she had stopped taking aspirin due to a dental procedure. Tr. 1215.

The assessments of Dr. Jorge Padilla-Rodríguez and Dr. Felix M. Rivera Borges are also consistent with the record relied upon by the ALJ. Dr. Padilla-Rodríguez noted that Plaintiff's gait and leg pulses were normal, she had motor power of at least 4 out of 5, and normal sensation. Tr. 1142; 1198. In November of 2019, Dr. Rivera Borges found no varicosities. Tr. 1198. The ALJ

also considered that Plaintiff took pain medication for her leg pain and that she testified that aspirin and compression therapy helped relieve leg pain and circulation problems. Tr. 29, 54-55. There is thus no question that the ALJ did take Plaintiff's edema into account; concluding that there was no evidence that Plaintiff could not ambulate effectively. Tr. 27. The ALJ's conclusion is based on substantial evidence in the record. Andrews v. Kijakazi, 594 F. Supp. 3d 163, 166 (D.Mass. 2022) (quoting Am. Textile Mfrs. Inst., Inc. v. Donovan, 452 U.S. 490, 523 (1981) ("[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."); see e.g., Baez v. Comm'r of Soc. Sec., 2022 WL 17729299 at 7 (D.P.R.) (ALJ did not err in concluding that claimant's symptoms were mild because she had no gait disturbance, mild edema and she felt better with certain medications).

The ALJ properly accounted for Plaintiff's edema and other lower extremity impairments in formulating the RFC when he noted that Plaintiff needed to alternate between sitting and standing based in part on her bilateral venous insufficiency. Tr. 31. See Robinson-Jones v. Astrue, 2012 WL 1016020, at *2 (D. Del.) ("While Plaintiff emphasizes the severity of her pain and its impact upon her ability to work, the ALJ acknowledged that Plaintiff experienced some degree of pain and physical and mental limitations as a result of her impairments, and the ALJ imposed restrictions accordingly."). The ALJ considered Plaintiff's edema, but the medical record did not support additional limitations in the RFC.

### 3. The Medical Record

Plaintiff argues that the ALJ did not make medical findings based on the medical record. Docket No. 13 at 21. However, this argument ignores the ALJ's in-depth analysis of the entire medical record. The ALJ evaluated the medical opinions and record, discounting Dr. Mañana Ferro's recommendations of more restrictions and relying instead on the state agency opinions. Tr. 32-33. The ALJ found Dr. Ortiz Ortiz persuasive. Dr. Ortiz Ortiz offered no functional limitations in Plaintiff's hand test. Tr. 32; 1005. And the DDS medical consultants were found less persuasive because they did not account for all of Plaintiff's impairments. Tr. 32. The ALJ evaluated the entire medical record. The evidence in the record supports the ALJ's RFC's determination. See Gurgone v. Kijakazi, 2022 WL 17652477, at *10 (D. Mass.) (quoting Rodriguez v. Sec'y of Health & Hum. Servs., 647 F.2d 218, 222 (1st Cir. 1981) ([T]he ALJ properly considered 'the totality of the

evidence' to craft [Plaintiff's] RFC, and this Court cannot overturn that determination if, as here, the 'evidence in the record as a whole' is adequate to support it.") (citations omitted).

### 4. Plaintiff could perform her past relevant work as a seamstress.

Plaintiff argues that both the RFC and the hypothetical presented to the vocational expert ("VE") were flawed because these did not account for limitations which impede her from returning to her past work as a seamstress. Docket No. 14 at 24-25. Plaintiff further argues that the VE testified that Plaintiff's last job was a medium level job, which she can no longer perform, and that the ALJ determined that she could return to her prior work in a conclusory manner. Id. at 25.

The ALJ presented Plaintiff's RFC limitations to a VE who determined that Plaintiff could work as a seamstress, as it is generally performed in the national economy and described in the Dictionary of Occupational Titles ("DOT"); not as previously performed by Plaintiff. Tr. 33; 61-62. The VE testified that the job of a seamstress is described in the DOT as a light range job. Tr. 61. The VE further testified that a hypothetical individual with a similar RFC and Plaintiff's educational background, experience and limitations could work as a seamstress. Tr. 62. The ALJ thus concluded that Plaintiff could perform her past work as a seamstress as it was defined in the DOT, regardless of the fact that Plaintiff had performed the work at a "medium" level in the past. Tr. 33. See SSR 82-61, 1982 WL 31387 (S.S.A.) (claimant not disabled when she can perform job duties as generally required in the national economy). See Lewis v. Barnhart, 281 F.3d 1081, 1083 (9th Cir.2002) (quoting Lee v. Astrue, 695 F. Supp. 2d 1033, 1041 (C.D. Cal. 2010) ("A claimant must be able to perform her past relevant work either as actually performed or as generally performed in the national economy.")).

Plaintiff had the burden of proving that she could not return to her former employment because of the alleged disability. See Santiago v. Secretary of Health & Human Services, 944 F. 2d 1, 5 (1st Cir. 1991). The record is devoid of evidence that Plaintiff's impairments affected her ability to perform her past work as described in the DOT. The ALJ was allowed to rely on the VE's opinion to conclude that Plaintiff's RFC limitations did not preclude her from performing her past work as a seamstress. Tr. 30-31. The ALJ's decision was not conclusory; it was based on the RFC of the Plaintiff and the testimony of the VE. Nothing more was required.

### IV. Conclusion

The ALJ evaluated the record as a whole and his decision is supported by substantial evidence in the administrative record using correct legal standards. After thoroughly and carefully

reviewing the record, and there being no good cause to reverse or remand, the final decision of the Commissioner is **AFFIRMED**, and this action is dismissed.

Judgment is to be entered accordingly.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 24th day of March 2023.

s/Giselle López Soler
GISELLE LOPEZ SOLER
United States Magistrate Judge